## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

**INDICTMENT**

JESUS CALVILLO
  a/k/a "Chuy"
SCOTT WILSON PHILLIPS
JOSE RODAS FLORES
  and
JOSE LUIS CRUZ-TORRES

1:22CR2 AW/GRJ

_____/

## THE GRAND JURY CHARGES:

### COUNT ONE

### BACKGROUND

1.　　At all relevant times, the federal Animal Welfare Act (or "AWA")

defined "animal fighting venture" as "any event that involved a fight conducted or

to be conducted between at least 2 animals for purposes of sport, wagering, or

entertainment." Title 7, United States Code, Section 2156(f)(1).

2.　　Further, the AWA prohibited anyone from possessing, training,

selling, buying, transporting, delivering, or receiving an animal for purposes of

having the animal participate in an animal fighting venture. Title 7, United States

Code, Section 2156(b).



3.     The AWA additionally prohibited use of an instrumentality of interstate commerce for commercial speech for purposes of advertising an animal for use in an animal fighting venture, or for promoting or furthering an animal fighting venture. Title 7, United States Code, Section 2156(c).

4.     At all relevant times, the AWA prohibited attendance at an animal fighting venture. Title 7, United States Code, Section 2156(a)(2)(A).

5.     At all relevant times, the AWA prohibited sponsoring or exhibiting an animal in, or causing an individual who has not attained the age of 16 to attend an animal fighting venture. Title 7, United States Code, Sections 2156(a)(1) and 2156(a)(2)(B).

6.     At all relevant times, it was unlawful to attend an animal fight under Florida state law.

### COCKFIGHTING

7.     Cockfighting is a contest in which a person attaches a knife, gaff, or other sharp instrument to the leg of a "gamecock" or rooster for the purpose of fighting another rooster. After a cockfighter straps a blade to a rooster, he or she intentionally faces the bird toward another similarly-armed rooster and sets it down within a few inches of that rooster. This results in a fight during which the roosters flap their wings and jump, while stabbing each other with the weapons that are

fastened to their legs. A cockfight ends when one rooster is either dead or refuses to continue to fight. It is not uncommon for one or both roosters to die after a fight.

8.      A rooster has a natural bony spur on the back of its legs. This spur is used by the rooster to cause injury to other animals when it kicks with its leg. The spur is the rooster's natural means of defense. Cockfighters often trim the bird's natural spurs down so that they can affix a sharp instrument to the rooster's legs to enhance the bird's fighting capability.

9.      Cockfighters may also cut off other parts of the bird's body to make it less of a target for an opponent during a cockfight. In particular, cockfighters may "dub" the rooster by cutting off its wattles and comb.

10.      "Handlers" prepare and handle birds during cockfights. They may be the actual bird's owner, or someone paid and enlisted to handle the job.

11.      Owners of cockfighting arenas, called "pits," hold organized fights where many people can fight their trained birds against the fighting birds of other people. A referee officiates during the cockfights. A series of individual cockfights is referred to as a "derby." A derby usually consists of dozens of individual cockfights or matches and can last for several hours, or even days, depending on the number of entries. Cockfighting arenas, depending on the level of sophistication, may have multiple fighting pits. "Main fights" occur in the main pit, while "drag pits" are used to finish fights from the main pit that have lasted so long

that many of the spectators have lost interest. Mortally injured roosters are sometimes placed off to the side where people can then gamble on which animal will die first.

12.     Owners of cockfighting pits make schedules that show the dates of the fights that people can enter and spectate. Owners and "promoters" distribute these schedules by various means to enhance participation and attendance at their organized fights. A "promoter" will typically make arrangements for and oversee activities at the derby.

13.     Owners charge participants a predetermined fee to enter a set number of roosters into a derby—usually between three and twelve roosters per entry. This fee may be anywhere from one hundred dollars to tens of thousands of dollars, depending on the event. The roosters' weights are usually matched within a few ounces of each other for individual fights. The cockfighter whose roosters have the best overall win/loss record in a derby wins the purse or "pot," which is usually comprised of the derby participants' entry fees, less amounts retained by the "house" or promoter(s). If multiple people tie with the best win/loss record, then the pot is split between them.

14.     Owners of the pit enrich themselves by keeping a percentage of the pot, charging participants for extra "options" (which may increase a participant's chance of winning more money), charging spectators to park at the pit, charging a

4

fee for spectators to get into the event, selling food and drinks at the event, selling gaffs and other bird fighting supplies, and charging fees for bird keeps at the pit location.

15.    A keep is a wooden hut with multiple compartments to house and segregate a participant's fighting birds while they attend the event. This is also sometimes referred to as a "cockhouse."

16.    For purposes of this Indictment, the term "rooster" is synonymous and may be used interchangeably with the terms "gamecock," "cock," "bird," and "chicken." A mature gamecock resembles an ordinary rooster, except that it may be surgically altered and is trained and conditioned for fighting.   Gamecocks also frequently receive vitamins, drugs, and other supplements to boost their strength and endurance. In addition, a "stag" is a young male chicken generally less than 2 years old, and a "pullet" is a young female chicken generally less than one year old.

17.    Persons engaged in cockfighting also frequently breed, buy, sell, and traffic in specialized breeds of roosters bred specifically for cockfighting. These breeds are called by names such as "Bruner" and "Jacobs," which refer to the "bloodline" of the bird. Particular breeds known for their winning records in cockfighting matches are particularly prized by users.

## THE CONSPIRACY

18.     Beginning on or about March 1, 2021, and continuing through on or about July 17, 2021, in the Northern District of Florida, and elsewhere, the defendants,

**JESUS CALVILLO,**
**a/k/a "Chuy,"**
**SCOTT WILSON PHILLIPS,**
**and**
**JOSE RODAS FLORES,**

(hereinafter, collectively, the "Defendants"), and others, did knowingly and intentionally conspire and agree with each other, to commit the following offenses:

a.     to sponsor and exhibit roosters (or, "cocks") in animal fighting ventures, contrary to Title 7, United States Code, Section 2156(a)(1); and

b.     to possess, train, transport, deliver, and receive roosters for purposes of having the roosters participate in animal fighting ventures, contrary to Title 7, United States Code, Section 2156(b).

## OBJECTS OF THE CONSPIRACY

19.     The objects of the conspiracy were for the Defendants, and others:

a.     to sponsor and exhibit roosters in animal fighting ventures; and,

b.     to possess, breed, train, transport, deliver, and receive roosters for the purpose of having the roosters participate in animal fighting ventures.

6

## MANNER AND MEANS OF THE CONSPIRACY

20.     It was part of the conspiracy that the Defendants and others developed and maintained properties for purposes of conducting cockfights.

21.     It was further a part of the conspiracy that the Defendants and others housed roosters in locations unknown, or on properties utilized by them for purposes of housing and training roosters for use in cockfights, for using and storing cockfighting equipment, and to conduct cockfights.

22.     It was further a part of the conspiracy that the Defendants and others trained and conditioned roosters to fight in cockfights.

23.     It was further a part of the conspiracy that the Defendants and others communicated with one another, by telephone, text message, and other electronic means, about: the transport, delivery, transfer, exchange, purchase, sale, breeding, training, and receipt of particular fighting roosters; their possession of, and ownership interests in particular fighting roosters; arrangements to fight roosters and to attend cockfights; the lineage or "bloodline" of certain fighting roosters; the aptitude, abilities, and fighting histories of particular fighting roosters; and evasion of law enforcement.

24.     It was further a part of the conspiracy that the Defendants and others transported and delivered roosters for use in cockfights and used vehicles to store, transport, and deliver fighting roosters and cockfighting equipment.

25.    It was further a part of the conspiracy that the Defendants and others arranged to fight roosters in cockfights.

26.    It was further a part of the conspiracy that the Defendants and others fought roosters in cockfights.

27.    It was further part of the conspiracy that the Defendants and others did arrange and provide wagers on the outcome of cockfights.

28.    It was further part of the conspiracy that the Defendants and others did breed roosters, which the Defendants then made available for resale to other individuals for purposes of the roosters being trained to later participate in cockfights.

## OVERT ACTS

29.    In furtherance of the conspiracy and to effect the unlawful objects thereof, the following overt acts, among others, were committed in the Northern District of Florida and elsewhere:

a.    As part of the conspiracy, **JESUS CALVILLO** sponsored animal fighting ventures, namely "cockfights" or "derbies," on multiple dates during the conspiracy as alleged herein at a property located at 1915 SE Worth Calhoun Road, Lafayette County, Mayo, Florida, 32066, (hereinafter referred to as "the property") in the Northern District of Florida, and that the property is owned by an individual identified here as "A.L.S."

8

b.      As part of the conspiracy, the property was set up and equipped with a wooden ring, or a cockfighting "pit," a temporary concession stand staffed with cooks, an area for weighing fighting birds, a dry-erase board to track progress throughout the derby, and one additional "side pit" to also be used for cockfights.

c.      As part of the conspiracy, **JESUS CALVILLO** received derby entry fees, commonly referred to as the "pot," from participants, and in turn gave the "pot" to an unindicted co-conspirator identified only as "MAMICHIS."

d.      Throughout the dates alleged in the conspiracy, **JESUS CALVILLO** operated derbies as frequently as bi-weekly at the property, which routinely drew participants from the Northern District of Florida, other parts of the state of Florida, and other states.

e.      At the cockfights held at the property, **JESUS CALVILLO** organized the cockfighters and refereed actual cockfights in the "pits."

f.      Throughout the conspiracy, an unknown and unidentified co-conspirator collected admission fees from attendees, which were fees separate from the cockfighter derby entry fees.

g.      Throughout the conspiracy, **SCOTT WILSON PHILLIPS** and **JOSE RODAS-FLORES** paid cockfighter derby entry fees to **JESUS CALVILLO** in order to enter their fighting birds in the derbies.

h.    Throughout the conspiracy, **JESUS CALVILLO** received a "tip" of approximately $100.00 per derby in part to manage each derby.

i.    Throughout the conspiracy, **JESUS CALVILLO** and others bred, raised, and sold roosters for use as fighting birds, and **JESUS CALVILLO** sold the fighting birds for $100.00 each.

j.    During the conspiracy, on or about May 16, 2021, **JESUS CALVILLO** managed a derby at the property, where there were approximately 25 persons in attendance, and for which the admission fee charged was $30.00, and the cockfighter derby entry fee was $400.00, with a "pot" awarded to the winner of the derby of approximately $3,600.00.

k.    As part of the conspiracy, on or about May 16, 2021, **SCOTT WILSON PHILLIPS** and **JOSE RODAS-FLORES** paid cockfighter derby entry fees to **JESUS CALVILLO** based upon the number of birds each entered, and **SCOTT WILSON PHILLIPS** and **JOSE RODAS-FLORES** then participated in the fighting of cocks at the property during the derby.

l.    As part of the conspiracy, on or about July 17, 2021, **JESUS CALVILLO** did make certain arrangements for a cockfighting derby to be held at the property, and that **SCOTT WILSON PHILLIPS** and **JOSE RODAS-FLORES** attended the derby, prior to the derby being raided by law enforcement.

10

All in violation of Title 18, United States Code, Section 371, Title 7, United

States Code, Sections 2156(a)(1) and 2156(b), and Title 18, United States Code,

Section 49.

### COUNT TWO

On or about, May 16, 2021, in the Northern District of Florida, and

elsewhere,

**JESUS CALVILLO,**
**a/k/a "Chuy,"**
**SCOTT WILSON PHILLIPS,**
**and**
**JOSE RODAS FLORES,**

did knowingly and intentionally sponsor and exhibit an animal, namely a rooster,

in an animal fighting venture.

In violation of Title 7, United States Code, Section 2156(a)(1), and Title 18,

United States Code, Sections 2 and 49.

### COUNT THREE

On or about, July 17, 2021, in the Northern District of Florida, the

defendant,

**SCOTT WILSON PHILLIPS,**

knowing he had previously been convicted of a crime punishable by imprisonment

for a term exceeding one year, knowingly possessed a firearm in and affecting

interstate commerce, that is:

11

1.     On or about August 20, 2014, **SCOTT WILSON PHILLIPS** was convicted in the State of Florida of Dealing in Stolen Property.

2.     For this crime, **SCOTT WILSON PHILLIPS** was subject to punishment by a term of imprisonment exceeding one year.

3.     Thereafter, **SCOTT WILSON PHILLIPS** did knowingly possess a firearm, to wit, a DPMS Panther Arms AR-15 rifle.

4.     This firearm had previously been transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT FOUR

On or about July 17, 2021, in the Northern District of Florida, and elsewhere,

### JOSE LUIS CRUZ-TORRES,

did knowingly and intentionally cause an individual who had not attained the age of 16 to attend an animal fighting venture.

In violation of Title 7, United States Code, Section 2156(a)(2)(B), and Title 18, United States Code, Section 49.

## COUNT FIVE

On or about July 17, 2021, in the Northern District of Florida, the defendant,

### JOSE LUIS CRUZ-TORRES,

12

an alien who had previously been excluded, deported, and removed from the

United States on or about May 5, 2016, was found to be unlawfully in the United

States, having not obtained the consent of the Secretary of the Department of

Homeland Security to reapply for admission to the United States.

In violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(1).

## FIREARM FORFEITURE

The allegations contained in Count Three of this Indictment are hereby

realleged and incorporated by reference.   Because the defendant,

## SCOTT WILSON PHILLIPS,

in committing and attempting to commit a felony in violation of the laws of the

United States, as charged in Count Three of this Indictment, perpetrated in whole

or in part by the use of a firearm, did knowingly possess the firearm described in

Count Three, any and all interest that this defendant has in the firearm involved in

this violation is vested in the United States and hereby forfeited to the United

States pursuant to Title 18, United States Code, Section 3665.

A TRUE BILL:

# REDACTED

January 25, 2022
DATE

JASON R. COODY
United States Attorney

ERIC K. MOUNTIN
Assistant United States Attorney

14